RENDERED: JULY 10, 2026; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0268-MR

JAMIE R. HOWELL[1]　　　　　　　　　　　　　　　　　APPELLANT

APPEAL FROM MADISON CIRCUIT COURT
v.　　　　HONORABLE COLE ADAMS MAIER, JUDGE
ACTION NO. 20-CI-00056

BAPTIST HEALTHCARE SYSTEMS,
INC.[2]　　　　　　　　　　　　　　　　　　　　　　　　APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND A. JONES,
JUDGES.

JONES, A., JUDGE:  Jamie Howell appeals from the Madison Circuit Court's

summary judgment dismissing her claims against Baptist Healthcare Systems, Inc.,

---

[1] At some point during the proceedings below, Appellant changed her surname from Howell to Johnson. Consistent with the notice of appeal and the case caption, we refer to her as Howell throughout this Opinion.

[2] Appellee was incorrectly identified in portions of the record as "Baptist Healthcare Systems, Inc."  The proper corporate name is Baptist Healthcare System, Inc.

d/b/a Baptist Health Richmond ("Baptist"), arising from an alleged sexual assault committed by Baptist employee Alvin Buckmaster while Howell was a patient in Baptist's emergency department.

On appeal, Howell challenges the dismissal of her claims for negligence, negligent training, gross negligence, respondeat superior, and negligent supervision. We conclude that Howell's appeal from the circuit court's August 3, 2022 order dismissing her negligence, negligent training, gross negligence, and respondeat superior claims is untimely. As to her remaining negligent-supervision claim, we agree with the circuit court that Howell failed to present affirmative evidence that Baptist knew or had reason to know that Buckmaster possessed harmful propensities or otherwise posed an unreasonable risk of harm to patients. Accordingly, we affirm.

## I. BACKGROUND

On October 3, 2018, Howell arrived at Baptist's Richmond, Kentucky, emergency department complaining of a migraine and possible seizure. She was transported by ambulance from Liberty Place Recovery Center, where she was participating in a court-ordered drug rehabilitation program. Multiple hospital employees participated in Howell's care, including Nurse Alvin Buckmaster and Nurse Jessica Dollins. Dollins was assigned to Howell's room, but Buckmaster

assisted with portions of Howell's intake and treatment, including obtaining blood work, starting an intravenous line, and collecting a urine sample.

Buckmaster had been a registered nurse since 2007 and had been employed by Baptist since approximately 2015. Before joining Baptist, he worked as a flight nurse and paramedic. The record reflects that he had no disciplinary history and no prior complaints or allegations of inappropriate conduct by patients or coworkers.

During her visit, Howell and Buckmaster were alone together on several occasions. The following day, Howell reported to Liberty Place personnel that Buckmaster had sexually abused her while she was receiving treatment. Among other allegations, Howell asserted that Buckmaster watched her disrobe, remained in the restroom while she produced a urine sample, engaged in nonconsensual sexual contact, including kissing and touching intimate areas of her body, and exposed himself to her. She further alleged that Buckmaster gave her his telephone number as she was being discharged from the hospital. Buckmaster denied Howell's allegations of sexual abuse but acknowledged giving her his telephone number and engaging in flirtatious conversation with her. He further acknowledged that after completing his assigned nursing tasks, he returned to Howell's room to continue their discussions.

-3-

At the time of the incident, Howell's room was located directly across from the nurses' station. Other nurses, technicians, assistants, clerks, and a physician assistant participated in Howell's care throughout her visit. Hospital employees who testified during discovery stated that they neither observed nor heard anything inappropriate between Howell and Buckmaster. Howell likewise did not report any misconduct to hospital personnel during her hospitalization.

After Howell reported the alleged misconduct to Liberty Place personnel, the director contacted law enforcement and a criminal investigation followed. Buckmaster was subsequently charged with three counts of First-Degree Sexual Abuse. Pursuant to a plea agreement, he pleaded guilty to one misdemeanor count of Attempted Sexual Abuse in the First Degree in Madison Circuit Court Action No. 19-CR-00646, and the remaining charges were dismissed. Howell and Buckmaster later entered into a settlement agreement resolving any civil claims Howell might have against him. Accordingly, Buckmaster is not a party to this action.

On January 24, 2020, Howell filed suit against Baptist asserting claims for negligence, negligent supervision, negligent training, gross negligence, and respondeat superior liability. The circuit court entered partial summary judgment on August 3, 2022, dismissing all claims except negligent supervision. Following additional discovery and motion practice, the circuit court entered

-4-

summary judgment in favor of Baptist on the remaining negligent-supervision claim on January 30, 2025. This appeal followed.

## II. ANALYSIS

### A. We Lack Jurisdiction to Review the Circuit Court's August 3, 2022 Summary Judgment Order.

Baptist argues that we do not have jurisdiction to review the circuit court's summary judgment in its favor on Count 1 (negligence), Count 3 (negligent training), Count 4 (gross negligence), and Count 5 (respondeat superior). It notes that the circuit court entered summary judgment on those claims in its August 3, 2022 order. That order concludes: "There being no reason[] for delay, this is a final and appealable Order."

Questions concerning appellate jurisdiction are reviewed *de novo*. *Louisville Historical League, Inc. v. Louisville/Jefferson Cnty. Metro Government*, 709 S.W.3d 213, 221 (Ky. 2025); *Cabinet for Health & Fam. Servs. v. D.W.*, 680 S.W.3d 856, 860 (Ky. 2023).

Howell did not file a reply brief, and her Appellant's Brief does not address this issue. However, Howell's notice of appeal states:

> Notice is hereby given that the above-named Plaintiff, Jamie Howell, by counsel, appeals to the Kentucky Court of Appeals, from the Final Judgment entered on January 30, 2025, *which is a final judgment clarifying the Judgment granting partial summary judgment*.

(Emphasis added.)

-5-

The circuit court's January 30, 2025 order was not a mere *clarification* of its prior ruling. Both the opening and closing paragraphs of that order make clear that it was intended to address only Count 2, negligent supervision, which the circuit court had previously determined was not ripe for summary judgment. The determinative question before us is whether Howell timely appealed the August 3, 2022 order. The answer depends on CR[3] 54.02, which provides in relevant part:

> When more than one claim for relief is presented in an action . . . the court may grant a final judgment upon one or more but less than all of the claims or parties only upon a determination that there is no just reason for delay. The judgment shall recite such determination and shall recite that the judgment is final. In the absence of such recital, any order or other form of decision, however designated, which adjudicates less than all the claims or the rights and liabilities of less than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is interlocutory and subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

CR 54.02(1).

Admittedly, the circuit court deviated slightly from the language of CR 54.02(1). Instead of stating that there was "no just reason for delay," the circuit court stated that there was "no reason[] for delay." Kentucky precedent has long required strict compliance with CR 54.02 before an otherwise interlocutory order

---

[3] Kentucky Rules of Civil Procedure.

adjudicating fewer than all claims becomes final and appealable. *See, e.g.*, *Peters v. Board of Ed. of Hardin Cnty.*, 378 S.W.2d 638, 639 (Ky. 1964); *Vorherr v. Coldiron*, 525 S.W.3d 532, 540 (Ky. App. 2017); *Turner Constr. Co. v. Smith Bros., Inc.*, 295 S.W.2d 569 (Ky. 1956).

Those cases, however, involved somewhat different circumstances. In each case, one or both of the required certifications were entirely absent. Here, by contrast, the circuit court's order addressed both the delay and finality elements. Although the circuit court omitted the word "just" and employed slightly different grammar than that found in CR 54.02, it expressly stated that there was no reason for delay and unequivocally declared the August 2022 order to be final and appealable.

Having reviewed the relevant precedent, however, we are convinced that strict compliance in the context of CR 54.02 requires that the order address both delay and finality and be worded in a manner that leaves no doubt that the trial court intended to "release for appeal final decisions upon one or more, but less than all, claims in [a] multiple claims action[]." *Watson v. Best Financial Services, Inc.*, 245 S.W.3d 722, 726 (Ky. 2008). That is the case here. While the better practice would be for trial courts to use the precise language of CR 54.02(1) so as to avoid even the hint of uncertainty, we are confident that the trial court's slight deviations did not prevent the August 3, 2022 order from achieving finality.

Because the August 3, 2022 order was final and appealable, Howell was required to file a notice of appeal within thirty days. RAP[4] 3(A). She did not do so. Instead, she waited until after entry of the circuit court's January 30, 2025 judgment resolving the remaining negligent-supervision claim. By that point, the time for appealing the August 3, 2022 order had long since expired. "Filing a notice of appeal within the prescribed time frame is still mandatory and failure to do so is fatal to an appeal." *Fox v. House*, 912 S.W.2d 450, 451 (Ky. App. 1995) (citations omitted). "[A] party failing to appeal from a final judgment containing the requisite recitals—as occurred here—does so to its peril." *Watson*, 245 S.W.3d at 727.

Additionally, Howell neither referenced the August 3, 2022 order in her notice of appeal nor attached a copy of that order to the notice of appeal. RAP 2(B)(1)(b) requires an appellant to identify the judgment or order appealed from, and RAP 2(B)(2) requires a copy of the judgment or order appealed from to be attached to the notice of appeal. Likewise, RAP 32(A)(7) and (E) require an appellant to include in the appendix to her brief the judgment, opinion, or order under review. Howell did not include the August 3, 2022 order in the appendix to her brief.

---

[4] Kentucky Rules of Appellate Procedure.

These omissions further cloud the question of whether Howell intended to appeal the August 3, 2022 order at all. In any event, to the extent she seeks review of that order, her appeal is untimely. RAP 10(A). Accordingly, we lack jurisdiction to review the circuit court's dismissal of Howell's claims for negligence, negligent training, gross negligence, and respondeat superior liability.

Therefore, the only claim properly before us is Howell's appeal from the circuit court's summary judgment dismissing her negligent-supervision claim.

### B. The Circuit Court Properly Granted Summary Judgment on Howell's Negligent-Supervision Claim.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56.03. The movant bears the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 482 (Ky. 1991); *Watson v. Landmark Urology, P.S.C.*, 642 S.W.3d 660, 666 (Ky. 2022).

"A party responding to a properly supported summary judgment motion cannot merely rest on the allegations in its pleadings." *Versailles Farm*

*Home and Garden, LLC v. Haynes*, 647 S.W.3d 205, 209 (Ky. 2022). Likewise, "speculation and supposition are insufficient to justify a submission of a case to the jury[.]" *O'Bryan v. Cave*, 202 S.W.3d 585, 588 (Ky. 2006). We review a grant of summary judgment *de novo*. *Isaacs v. Sentinel Ins. Co. LTD.*, 607 S.W.3d 678, 681 (Ky. 2020).

Kentucky recognizes a cause of action for negligent supervision. *McDonald's Corp. v. Ogborn*, 309 S.W.3d 274, 291 (Ky. App. 2009). To prevail, a plaintiff must establish that "[(1)] the defendant knew or had reason to know of the employee's harmful propensities; [(2)] the employee injured the plaintiff; and [(3)] the hiring, supervision, or retention of an employee proximately caused the plaintiff's injuries." *Grand Aerie Fraternal Order of Eagles v. Carneyhan*, 169 S.W.3d 840, 844 (Ky. 2005). Howell acknowledges that the first element, whether the employer knew or had reason to know, is equivalent to the duty inquiry, which presents a question of law for the court. *See Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 248 (Ky. 1992).

Howell argues that Baptist knew Buckmaster, acting as the triage nurse, performed sensitive examinations of Howell without another employee present and knew that he repeatedly reentered her room after his nursing tasks were complete. She further contends that these facts should have alerted Baptist to the risk of misconduct.

The problem with Howell's argument is that the knowledge upon which she relies was allegedly acquired contemporaneously with the events in question. At best, Baptist learned these facts while Buckmaster was treating Howell. At worst, the facts became known only after Howell reported the alleged assault. Neither circumstance satisfies the knowledge element required for a negligent-supervision claim.

As our courts have repeatedly recognized, duty is inseparable from foreseeability. *Schneider Electric USA, Inc. v. Williams*, 733 S.W.3d 180, 192 (Ky. 2026) ("The existence of a duty is a question of law informed by whether the defendant's conduct created a foreseeable risk of harm."). Foreseeability, in turn, requires information that would have allowed the defendant to appreciate and guard against the risk before the injury occurred. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 90 (Ky. 2003). "Foreseeability is not a hindsight determination[.]" *Lhotsky as Next Friend for Lhotsky v. Sutcliffe*, 723 S.W.3d 842, 851 (Ky. App. 2025).

In almost every negligence action, one can look back with perfect 20/20 vision and identify actions that might have prevented the injury. The law, however, requires more than hindsight. The defendant must have been on notice of facts that would have allowed it to appreciate the risk and to act before the conduct took place.

*Ogborn* illustrates the point. There, for more than a decade, McDonald's was aware that an unknown individual was placing hoax telephone calls to McDonald's restaurants and other fast-food establishments while impersonating a police officer. During that time, managers, employees, and third parties were persuaded to conduct strip searches and other degrading acts at the caller's direction. Prior to the incident at issue, the scheme had been perpetrated at numerous McDonald's locations. Given McDonald's longstanding knowledge of the hoax and its repeated success, this Court concluded that McDonald's had a duty to train, supervise, or warn its employees regarding the scheme. *Ogborn*, 309 S.W.3d at 292.

No comparable evidence exists here. Howell produced no evidence that Buckmaster had ever been accused of inappropriate conduct by a patient, coworker, supervisor, or former employer. There is no evidence of prior disciplinary action, prior complaints, prior criminal conduct, prior reports to the Kentucky Board of Nursing, or any other information that would have placed Baptist on notice that Buckmaster posed a risk of sexually abusing patients. To the contrary, the undisputed evidence established that Buckmaster had worked as a nurse since 2007, had been employed by Baptist since approximately 2015, and had no known history of misconduct.

Nor are we persuaded by Howell's reliance on Buckmaster's testimony that he had a naturally flirtatious personality. Even accepting that characterization, Howell produced no evidence that Buckmaster's disposition had previously manifested itself in the workplace in a manner that generated complaints, disciplinary action, or other concerns that would have placed Baptist on notice that he posed a risk to patients.

Howell relied primarily on the testimony of her expert, Dr. Jonathan Thomas. Dr. Thomas offered opinions regarding Baptist's policies and practices regarding staffing assignments, patient observation, and the collection of urine samples in an emergency department setting. However, much of Dr. Thomas's testimony concerns whether Baptist's policies and procedures could have been improved. Dr. Thomas criticized aspects of Baptist's practices regarding staffing assignments, patient observation, and urine-sample collection. Yet, he was unable to identify evidence that Baptist knew or had reason to know Buckmaster possessed harmful propensities before the events at issue. And Howell did not identify any prior incidents demonstrating that Baptist's policies had resulted in similar misconduct and that Baptist nevertheless failed to alter its training or supervisory practices.

This distinction is significant because Howell's general-negligence claim is not before us. The only claim remaining in this appeal is negligent

supervision. To survive summary judgment on that claim, Howell was required to present affirmative evidence that Baptist knew or had reason to know Buckmaster posed a risk of harm or that prior experience had demonstrated a need for different training or supervision. Evidence that a policy might have been "better" does not satisfy that burden. And, even in the general negligence context, the fact that a policy could have been better does not establish liability unless it can be shown that the policy in place fell below the applicable standard of care. Dr. Thomas was unable to say that Baptist actually deviated from the standard of care.

In sum, viewing the record in the light most favorable to Howell, we agree with the circuit court that Howell failed to present affirmative evidence sufficient to create a genuine issue of material fact regarding the knowledge element of her negligent-supervision claim. Because Howell cannot establish an essential element of that claim, summary judgment was properly granted.

### III. CONCLUSION

For the foregoing reasons, we conclude that we lack jurisdiction to review the circuit court's August 3, 2022 summary judgment dismissing Howell's claims for negligence, negligent training, gross negligence, and respondeat superior liability. We further conclude that the circuit court properly granted summary judgment on Howell's negligent-supervision claim because she failed to present affirmative evidence creating a genuine issue of material fact regarding

-14-

Baptist's knowledge of any harmful propensities on Buckmaster's part.

Accordingly, the judgment of the Madison Circuit Court is AFFIRMED.

ALL CONCUR.


BRIEF FOR APPELLANT:

Dan Thompson
Somerset, Kentucky

BRIEF FOR APPELLEE:

Ryan D. Nafziger
Tera M. Rehmel
Hayley A. Abbott
Louisville, Kentucky